IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MCKINSEY & COMPANY, INC.,

                    Plaintiff,

v.

CHRISTOPHER BOYD,
NATHAN GORDON,
STEPHANIE DEFOE-HASKINS,
LAURA GORDON, STEVEN
BOYD, BRYAN BAINBRIDGE,
VINCENT BRESETTE, NICHOLAS
DEPERRY, and CHRISTOPHER
HICKS, in their official capacities
as Tribal Council of the Red Cliff Band
of Lake Superior Chippewa Indians, and
HENRY M. BUFFALO, in his official
capacity as Chief Judge of the Red Cliff
Tribal Court,

                    Defendants.

OPINION AND ORDER

22-cv-155-wmc

---

      McKinsey & Company, Inc., ("McKinsey") brought this action for injunctive relief on the basis that defendants do not have tribal jurisdiction over the underlying case in the Red Cliff Tribal Court.  Given the high likelihood that the tribe lacks jurisdiction and the burden on all parties, as well as the unnecessary expenditure of resources by the Tribal Court and needless delay in final resolution of the parties' dispute in a court with actual jurisdiction, including possible participation in the ongoing MDL suit in federal court, the court finds that entry of an injunction is appropriate.

BACKGROUND

McKinsey is a New York management consulting firm, which, among other things, provides marketing advice to pharmaceutical clients, including those that sold opioids. (Defs.' Resp. to Pl.'s PFOF (dkt. #27) ¶¶ 14-18.)  The Red Cliff Band of Lake Superior Chippewa Indians ("Red Cliff") is a federally recognized tribe with its reservation located in Bayfield County, Wisconsin.  (Defs.' Resp. to Pl.'s PFOF (dkt. #27) ¶ 4.)  Red Cliff sued McKinsey on January 27, 2022, in the Red Cliff Tribal Court, seeking to hold it accountable for consulting work with opioid companies and the ensuing, devasting opioid epidemic on the Red Cliff Reservation.  (Defs.' Resp. to Pl.'s PFOF (dkt. #27) ¶¶ 5-9.)

McKinsey has no offices on the Red Cliff Reservation nor anywhere else in Wisconsin; none of its opioid-related engagements originated within the Reservation or this state; and none of its consultants could have been based in an office there.  (Defs.' Resp. to Pl.'s PFOF (dkt. #27) ¶¶ 15, 22.)  McKinsey also does not have any commercial dealings with the Tribe.  (Defs.' Resp. to Pl.'s PFOF (dkt. #27) ¶ 26.)  McKinsey has now moved for a preliminary injunction against the tribal action, arguing that the tribal court clearly lacks jurisdiction.

OPINION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A party seeking preliminary injunctive relief must demonstrate as a threshold matter that he: (1) has a reasonable likelihood of success on the merits; (2) lacks an adequate remedy at law; and (3) will suffer irreparable harm if relief is not granted.  *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts*

2

*of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If these elements are met, the court must then balance, on a sliding scale, the irreparable harm to the moving party with the harm an injunction would cause to the opposing party, as well as any larger public policy interests at play. *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*, 889 F.3d 432 (7th Cir. 2018). As the parties solely dispute the first and third prongs, the court focuses on the likelihood of success and irreparable harm.

### A. Likelihood of Success

"Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." *Montana v. United States*, 450 U.S. 544, 564 (1981). However, the Supreme Court has set out very limited circumstances under which tribes retain jurisdiction over *non-members*, beginning with the "general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997). Even if nonmember activities take place on the reservation, which is not applicable here, this general rule restricting tribal authority "is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians—what we have called 'non-Indian fee land.'" *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 328 (2008).[1] Thus, "[t]he actions of nonmembers *outside* of the reservation do not implicate the Tribe's sovereignty" at all. *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior*

---

[1] Non-Indian fee land is still "within the Tribe's reservation [but] owned in fee simple by non-Indians." *Strate*, 520 U.S. at 446–47.

*Chippewa Indians*, 807 F.3d 184, 207 (7th Cir. 2015), as amended (Dec. 14, 2015) (emphasis added).

Nevertheless, defendants briefly argue against the applicability of this general principle here, suggesting that courts should allow a tribe's reach to extend beyond "activities occurring only on tribal land." (Defs.' Opp'n (dkt. #26) 13) (citing *Norton v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 862 F.3d 1236, 1243 (10th Cir. 2017)). However, this suggestion has already been rejected by the Seventh Circuit; specifically, in *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184 (7th Cir. 2015), as amended (Dec. 14, 2015), a tribal entity argued that activities subject to jurisdiction are not limited to those occurring on reservation property alone. *Id.* at 206. In rejecting this argument, the Seventh Circuit explained that the Supreme Court had already held "the sovereignty that the Indian tribes retain is of a unique and limited character. It centers on the land held by the tribe and on tribal members within the reservation." 807 F.3d at 207 (quoting *Plains*, 554 U.S. at 327). Thus, the Seventh Circuit held that "[t]he actions of nonmembers outside of the reservation do not implicate the Tribe's sovereignty." *Stifel*, 807 F.3d at 207.[2]

---

[2] Further, without explanation, defendants invoke the second *Montana* exception, holding that "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on *fee lands within its reservation* when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566 (emphasis added). However, as already explained, the italicized language takes the plaintiff outside the Tribe's reach, at least in a Tribal Court. Thus, all binding caselaw offered by defendants or found by this court directs that there is *no* tribal jurisdiction over non-members' conduct occurring outside of reservation land.

Here, there is no suggestion that any activity took place on tribal land. While defendants broadly argue that McKinsey's aid to the opioid industry contributed to addiction on the reservation, threatening the health of the tribe, that is too attenuated to be considered "conduct of non-Indians on fee lands within its reservation." Opioid *addiction* certainly plagues tribal lands, along with the majority of the rest of the country, but McKinsey is being sued for advising *pharmaceutical companies* selling opioids, who in turn manufacture, distribute and prescribe the use of these drugs to physicians, dentists and patients throughout the country, arguably creating demand and addiction that would not be there otherwise. However, defendants do not point to *any* action *by* plaintiff taking place on tribal land, and the court is skeptical that any such evidence exists given McKinsey's lack of ties state of Wisconsin, much less the Red Cliff Tribe. Accordingly, the strong general rule against the exercise of tribal jurisdiction over non-tribe members plainly applies here.

Alternatively, defendants argue that McKinsey is barred from now raising any jurisdiction bar in this court by the tribal exhaustion "doctrine [that] requires litigants, in some instances, to exhaust their remedies in tribal courts before seeking redress in federal courts." *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir. 1993). Certainly, the United States Supreme Court generally "favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985). However, in *Strate*, the Supreme Court later narrowed the applicability of this general exhaustion rule for non-members unwillingly dragged into tribal courts, and

5

instead held "[w]hen, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct," tribal exhaustion is unnecessary. 520 U.S. at 459. The Court even affirmed this ruling in 2001, reiterating that when "it is clear, as we have discussed, that tribal courts lack jurisdiction . . . adherence to the tribal exhaustion requirement in such cases 'would serve no purpose other than delay,' and is therefore unnecessary." *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (quoting *Strate*, 520 U.S. at 459). As in *Strate*, therefore, the court can find *no* legal basis for the assertion of tribal jurisdiction over the plaintiff, making McKinsey's likelihood of success on the merits of its claim a near certainty.

### B. Irreparable Harm

While plaintiff makes a compelling case on its likelihood of success, it makes a weaker case for finding irreparable harm should this court *not* enjoin the existing procedures in tribal court. Primarily, plaintiff points to the burden of defending a case in tribal court, as well as the possibility that it would be unable to recoup certain costs incurred in that defense. (Pl.'s Op. Br. (dkt. #5) 17.) This is not the kind of unavoidable, not easily ascertainable damage usually required to obtain the entry of preliminary injunction. Indeed, McKinsey could likely be made whole for these damages in the form of a monetary award. *Vogel v. Am. Soc. of Appraisers*, 744 F.2d 598, 599 (7th Cir. 1984) (finding irreparable harm when "plaintiff is unlikely to be made whole by an award of damages or other relief at the end of the trial"). This is not to say there is an *absence* of irreparable harm in the form of wasted time and resources of all parties and the court were a meritless

6

case be allowed to proceed in tribal court for which *no* mechanism exists to measure recompense.

Moreover, the Seventh Circuit looks at the preliminary injunction test as a sliding scale, where all factors need not point the same way for an injunction to be proper. *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). Instead, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Id*. While plaintiff has not made a compelling case for irreparable harm, therefore, the fact that defendants' claim to tribal jurisdiction is contrary to settled law still carries the day.

Additionally, the defendants have not shown that they would be hurt by an injunction, except to argue that an injunction would degrade the tribal right to self-government and leave them without a forum to try their claims. (Defs.' Opp'n (dkt. #26) 16.) As both sides note, however, there is already a pending multi-district litigation (the "MDL") brought by tribes regarding McKinsey's consulting with pharmaceutical companies on the promotion of opioids already underway. (Pl.'s Op. Br. (dkt. #5) 17.) While the defendants suggest the MDL is not a substitute, as its tribal action is bringing common law claims under its tribal sovereignty rather than federal or state law claims, when one factors in the obvious efficiency of trying all such tribal claims before one court, the MDL would certainly seem the preferable forum. (Defs.' Opp'n (dkt. #26) 16.) This is especially true since: (1) any viable claims can be asserted by each of the Tribes in the MDL; and (2) any proceedings in tribal court will almost certainly be found to be a nullity

7

in the end. Moreover, even if the MDL is not a perfect or even preferred substitute, the court finds, at least for purposes of deciding the motion for a preliminary injunction before it, that the existence of this parallel MDL case including similar claims by many, other tribes ameliorates defendants' claim that an injunction would cause them great injury. With neither party offering a convincing argument as to harm, the facts, law and public policy strongly favors McKinsey and warrants this court's imposition of a preliminary injunction.

ORDER

IT IS ORDERED that defendants are ENJOINED from proceeding with Tribal Court Case No. 22-CV-02 or taking any steps in furtherance of the Tribal Action until the final completion of this lawsuit.

Entered this 6th day of June, 2022.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge